**Application of Robert J. HERSCHLER.**

**Patent Appeal No. 8889.**

United States Court of Customs and Patent Appeals.

March 8, 1973.

Robert E. Howard, San Francisco, Cal., attorney of record, for appellant. Thomas R. Lampe, San Francisco, Cal., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, ALMOND, BALDWIN, and LANE, Judges.

LANE, Judge.

This appeal is from the decision of the Board of Appeals, adhered to on reconsideration, sustaining the rejection of claims 16, 27, 28, 29, 35, 36 and 38 of appellant's application [1] entitled "Enhanced Plant Tissue Penetration" as unpatentable under 35 U.S.C. § 103 in view of a publication of The Stepan Chemical Company (hereafter Stepan).[2] We reverse.

Appellant describes his invention as follows:

> This invention relates to a method and compositions whereby the penetration of plant-active agents into a living plant may be enhanced. More particularly, the invention relates to a method and compositions where plant-active agents are applied to plants along with dimethyl sulfoxide so that they may be penetrated into plant tissue which previously barred penetration or permitted penetration of the agents to a lesser degree.

The invention clearly stems from the recognition of the ability of dimethyl sulfoxide (hereafter DMSO) to enhance the penetration of a plant-active agent into the plant tissue.

Within the sense of the term "plant-active agent," appellant inculdes "plant growth regulators, nutrients, some herbicides, insecticides, fungicides, viru-

1. Serial No. 615,377 filed February 13, 1967, as a continuation-in-part application of Serial No. 344,558 filed February 13, 1964, which was, in turn, a continuation-in-part application of both Serial No. 203,743 filed June 20, 1962, and Serial No. 67,493 filed November 7, 1960.

2. "Solubilities of Various Substances in Dimethyl Sulfoxide," January 1956, pp. 1–10.

cides, antibiotics, [and] defoliants * * * ," which "are only effective to the extent that they can penetrate into plant tissue." Appellant also contemplates the improvement in the effectiveness of such agents as "pesticides, colorants, odorants, [and] defoliants * * * ," agents which apparently can perform their functions by their presence on only the surface of the plant but which seemingly work better with penetration.

Claims 16 and 35 are representative of the appealed claims, all of which are method claims, and read as follows:

16. A method of enhancing penetration of a plant-active agent into the living tissue of a living rooted plant, said agent being capable of effecting a physiological response within the plant, which comprises contacting the plant with a liquid composition comprising an amount of said agent effective to obtain physiological response by said plant and dimethyl sulfoxide in an amount effective to enhance penetration of said agent into the living tissue of said plant, the concentration of dimethyl sulfoxide in said composition being at a substantially nonphytotoxic level for the selected amount and route of application of said composition to the plant.

35. A method of enhancing penetration of a herbicide into the living tissue of a living rooted plant which comprises contacting the plant with a composition comprising an effective amount of a herbicide and dimethyl sulfoxide in an amount effective to enhance penetration of said herbicide into the living tissue of said plant.

The remaining claims impose various limitations on the composition and method of applying it to a plant. Some of those claims specify that the composition contains a major amount of water or "agricultural diluent" and limit the concentration of DMSO to up to 10% by weight of the composition.

The sole reference relied upon is Stepan, a publication which lists many substances which are soluble in DMSO. The pages specifically referred to merely contain a listing of each substance and its degree of solubility at 20–30° C. (room temperature), 90–100° C., and 130–180° C. Among the substances are some fifteen insecticides, all of which appear to be quite soluble at room temperature. The board focused on one such insecticide, 2, 4–dichlorophenoxyacetic acid (hereafter 2, 4–D), indicated to be "very soluble" at room temperature, reasoning as follows:

[Stepan] discloses not only the association of dimethyl sulfoxide with various standard insecticides as a solvent but also the similar association of this solvent with 2, 4–dichlorophenoxyacetic, an or even "the," outstanding hormonal herbicide in general, which operates through its extreme growth-enhancing or "regulating" effect. This compound is so well known for this utility that its association with the specified compound as a very effective solvent would suggest to any person in the art its applicability to plants, or vegetable growth as a herbicide. No utility of significant proportions with respect to agricultural *insecticides* is similarly evident so that the herbicide does not stand in the same position as the insecticides with which it is grouped. (The grouping, no doubt, is a matter of convenience rather than strict classification.) The disclosure of the insecticide-solvent combinations does not carry the same necessary association of the dimethyl sulfoxide with plant utility because these insecticides are not restricted to *plant* treatment. As applied to herbicides, and particularly 2, 4–dichlorophenoxyacetic acid, the provision of emulsifying agents, wetting agents, and application in the form of an aqueous emulsion of herbicidal solution are so much to be expected that they would contribute nothing unobvious to the basic concept provided by the reference * * * .

In a decision on reconsideration, the board referred to that portion of appel-

lant's specification which states the following:

> Plant-active agents are conventionally applied in dilute form in composition with various nonphytotoxic agricultural diluents or carriers, in most cases water. Where the plant-active agent is insoluble in the diluent, emulsifiers or dispersing agents are utilized to maintain the agent in a dispersed condition in diluent. Only a very few agents penetrate well into plant tissue even with such diluents or carriers and still fewer have the ability to move through the vascular system of the plant (translocate) once they are penetrated. It has generally been accepted that the choice of diluent or carrier or of surfactant seldom increases the rate of penetration of a given agent since their role is merely to bring the agent into better distribution and intimate contact with the plant surfaces. Few (if any) substances are available which may be applied with the agent, in either concentrated or dispersed form, to materially increase penetration.

The board also alleged as a fact "that the spreading powers of the DMSO are an important consideration in the employment of the DMSO as an herbicidal solvent and that on the record there was no reason to question the spreading characteristics of the solvent."

## OPINION

We are of the view that, on the record before us, the claimed subject matter would not have been obvious to one of ordinary skill in the pertinent art at the relevant time. Stepan discloses the solubility of a known herbicide, 2, 4–D, in DMSO, but does not teach that such a solution may be applied directly to plants. While the board, as well as the solicitor, has attempted to strengthen the import of Stepan by relying on appellant's specification disclosure, all we glean from that disclosure, reproduced above, is that a plant-active agent is normally applied in dilute form in various non-phytotoxic agricultural diluents,

usually water. The missing link is any suggestion that either DMSO was a known "agricultural diluent" at the time appellant's invention was made or that it was known at that time to use *any* solvent in the capacity of "agricultural diluent." We are not inclined to agree with the board that the "association" of a well known herbicide with a certain solvent, without more, necessarily suggests the application of a solution of the herbicide in that solvent to a plant.

We also find no appreciation in Stepan of the underlying basis of the invention, recognition of the ability of DMSO to enhance penetration. We do not understand the Patent Office to challenge the assertion that DMSO so functions and are aware of nothing in the record tending to rebut the contention that it is unexpected. When the evidence presented by appellant is weighed against the case for obviousness made out by the Patent Office, patentability is convincingly established.

For the reasons stated, the decision of the board is reversed.

Reversed.